## SYMINGTON–ANDERSON CO. v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia. Submitted May 9, 1929. Decided June 3, 1929.

No. 4766.

Robert P. Smith, of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., C. M. Charest and Sewall Key, both of Washington, D. C., and N. D. Keller, of Pittsburgh, Pa., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Board of Tax Appeals, affirming the finding of the Commissioner of Internal Revenue assessing a deficiency tax against appellant company for the year 1918, in the amount of $76,174.96.

It appears that early in 1917, after the declaration of war between the United States and Germany, one T. H. Symington, a recog-

nized authority in the manufacture of guns and munitions, was summoned to Washington for the purpose of negotiating a contract for the manufacture of 3,000 three-inch artillery guns. The negotiations extended for several months, during which Symington made repeated trips to Washington at considerable time and expense. A rather voluminous correspondence is set out in the record, which resulted in an agreement that Symington should erect a plant suitable for the manufacture of guns, and that an order would be placed with him for 3,000 three-inch artillery guns, to be completed by March 1, 1919.

Under the agreement Symington was to receive a fixed profit of $390 over and above the estimated cost of $2,625 on each gun manufactured. It was also stipulated that for any saving effected under the estimated cost price Symington was to receive one-third of such saving. If, however, the cost of each gun was greater than the estimated amount, the minimum amount which Symington was to receive was fixed at $340 for each gun manufactured. In the contract it was stipulated for adjustments in case of loss and partially completed materials.

In August, 1917, Symington, with the approval of the government, organized appellant corporation. In consideration of his assignment to it of his contract and agreement with the government, he received 7,500 shares of the capital stock of the corporation. The remaining 2,500 shares were issued to M. H. Anderson in consideration for services he rendered in preparing for the construction of the plant and organizing the work prior to the incorporation. Anderson was an expert in manufacturing ability, and it is alleged that his future services were an element entering into the consideration for the issue of the stock to him.

During the year 1918, 687 guns were manufactured and delivered on the contract, on which it was found that the corporation realized a net income of $324,874.85 and a tax liability thereon of $257,864.88. The Commissioner held that appellant company was not entitled to any allowance or deduction for exhaustion or depreciation of the contract acquired from Symington, and that the taxpayer's only source of income was from the manufacture of guns under the provisions of the contract.

The Board of Tax Appeals, approving the ruling of the Commissioner, held that the contract had no market value for the purpose of depreciation, and that petitioner's invested capital was nonexistent, and tax thereon could not be determined under the provisions of section 328 of the Revenue Act of 1918, 40 Stat. 1058, 1093.

It will be observed that what Symington in fact turned over to the corporation for 7,500 shares of nonpar value stock was an agreement with the government for a contract which materialized on August 31, 1917, after the corporation had been organized and the stock issued. We deem it unnecessary, in disposing of this case, to decide whether the correspondence and negotiations between Symington and the government, prior to the organization of the corporation, amounted to an enforceable contract or not, since in any event the corporation is not in position to avail itself of the relief here sought.

The assets, if they may be denominated as such, which Symington and Anderson turned over to the corporation, as consideration for the stock, did not establish such a basis of capital as would permit the corporation to avail itself of allowance for exhaustion under section 234(a)(7) of the Revenue Act of 1918 (40 Stat. 1078). The annual deduction, permitted under this provision of the act, is based upon the cost of the exhaustible assets on the theory that the corporation is entitled to set aside each year, as exempt from taxation, that portion of the assets used up or exhausted in the trade or business during the year, so that at the end of its useful life the aggregate of the sums deducted equal the original cost.

The difficulty in the present case is that the contract, assuming it to be such, possessed no actual cost value. It represented no capital investment. At the time of its assignment to the corporation it amounted to nothing more than a paper agreement for a contract. This, we think, cannot be considered as invested capital, or as equivalent to actual cash value of tangible or intangible property exchanged for stock or shares. Indeed, it is significant that as late as March 13, 1924, appellant corporation, through its assistant secretary and treasurer, advised the Commissioner of Internal Revenue as follows: "The Symington-Anderson Company does hereby agree that the sum of $324,874.85 is a proper net income for the year 1918, and further agrees that within the meaning of the Revenue Act of 1918 the said company had no invested capital whatsoever."

But it is insisted that Symington had incurred expenses in conducting the negotiations which preceded the organization of the corporation, and that such expenses at least entered into the cost of the contract, and as such should be regarded as a capital charge; but these items seem to have been too uncer-

tain and indefinite for the basis of any claim, since Symington in his testimony referred to them as follows: "To a very small extent I paid these obligations. I paid the preliminary expenses myself, but I cannot state to what extent." Thus there was no tangible proof upon which a finding as to the amount of the expenses could be determined. These items of expense, if proved, would constitute the only assets available to appellant, within the limitations of section 331 of the Revenue Act (40 Stat. 1095), which provides as follows:

"In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, that if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation."

Measured by this provision of the statute, all that Symington conveyed to the corporation, which can be regarded as invested capital, was the actual expense he had incurred in securing this agreement for a contract. To this expense the statute limits the value of the invested capital, when, as here, more than 50 per centum of the stock remains in Symington, the previous owner, in lieu of the agreement transferred.

A more insurmountable objection to the right of appellant's claim is presented in section 327 of the Revenue Act. It is claimed that appellant comes within subdivision (a), which provides in substance that, where the Commissioner is unable to determine the invested capital as provided in section 326, the tax shall be determined under section 328 by comparison "with representative corporations whose invested capital can be satisfactorily determined under section 326 and which are, as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances." Before, however, the right of comparison can be invoked, there must be an existing invested capital capable of calling for the exercise of this discretion on the part of the Commissioner. As we have observed, the rights acquired from Symington had no value as invested capital, since the amount of their cost to him is limited to certain indefinite expenses not established.

Nor can appellant, through the medium of subdivision (d) of section 327, invoke the discretionary relief afforded in section 328, since its income for the taxable year consisted of profits derived on a cost-plus basis from a government contract. The contract in this case called for a certain number of guns to be manufactured and delivered, for which appellant was to be paid the entire cost of producing the guns, plus a fixed profit for each gun so manufactured and delivered. We are of the opinion that this constituted a cost-plus contract, and for that reason alone appellant cannot prevail.

The decision of the Board of Tax Appeals is affirmed, with costs.